UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KARI CALLAWAY, Individually, and as Personal Representative of the ESTATE OF ERNEST CARL JOHANSEN,

Plaintiff,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY, a foreign insurance corporation,

Defendant.

Case No. C25-813RSM

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL

This matter comes before the Court on Plaintiff's Motion to Compel, Dkt. #32. Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") has filed an opposition brief. Dkt. #36. Neither party requests oral argument.

The basic facts of this case have recently been set forth by the Court:

> According to the proposed amended complaint, a water damage event occurred at the home of Mr. Johansen while he was away on a cruise. Dkt. #15-1 at 6. Mr. Johansen passed away during that trip. *Id*. He left his estate, including the home, to his daughter Kari Callaway. *Id*. A claim was made to Liberty Mutual for the water damage. *Id*. On February 16, 2024, Liberty Mutual issued an estimate of $38,224.17 to repair and/or replace the damage caused by the water loss. *Id*. Ms. Callaway hired a contractor who invoiced her for $92,386.43. *Id*. at 6–7. Liberty Mutual initially refused to pay the difference, and Ms. Callaway and/or the estate paid for the work to be done. *Id*. at 7. She then retained counsel. *Id*. Liberty Mutual sent a letter on September 17, 2024, stating, "[i]n accordance with the policy, we are demanding to appraise the differences between Liberty Mutual's estimate for mitigation and

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL - 1

> reconstruction and [the contractor's] estimate for mitigation and reconstruction." *Id*. Appraisers selected by the parties agreed that the reasonable value of the mitigation portion of the repair was $47,307.96 and that the reasonable value of the restoration portion of the repair was $88,395.16; in other words, Liberty Mutual initially underpaid Plaintiff a total of $97,478.95. *Id*. at 8. According to Liberty Mutual, it has subsequently paid the full appraisal amounts to Plaintiff, and Plaintiff does not deny this. *See* Dkts. #17 and #19; *see also* Dkt. #18 at 17.

Dkt. #25 at 1–2.

Plaintiff Callaway has sued Liberty Mutual for violation of the Insurance Fair Conduct Act ("IFCA"), Consumer Protection Act ("CPA"), bad faith, and negligent claim handling. *See* Dkt. #27. After a meet-and-confer, Callaway now seeks to compel production of the following documents in discovery: "application and underwriting files, entire personnel records for claim handlers, additional information regarding the bonus and incentive programs, general policies and procedures regarding claim audits, and the agency and client file." Dkt. #32 at 4.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). If requested discovery is not answered, the requesting party may move for an order compelling such discovery. Fed. R. Civ. P. 37(a)(1). The party that resists discovery has the burden to show why the discovery request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

Regarding application and underwriting files, Liberty Mutual argues:

> Plaintiff claims that underwriting files and application materials in requests 1 and 3 along with what appears to be the same thing

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL - 2

defined as an "agency file" or "client file" in requests 13 and 14. Plaintiff makes only the most vague and general assertions of relevance for these materials on the ground that there are bad faith allegations. But Plaintiff assumes that all insurance disputes – or at least all homeowners disputes – are the same. Insurance cases often involve disputes over the meaning of the terms of the policy, such as the grant of coverage or an exclusion. Alternatively, there may be a dispute about the limits of insurance or how those limits were determined. In such cases, a request for underwriting materials is understandable even if it is unlikely to end up being relevant in the end. But there is no dispute about such matters here. There was a disagreement between the parties regarding the costs of mitigation and repairs for an admittedly covered loss. That dispute was resolved by appraisal. And Liberty paid benefits based on the award. Plaintiff's sole "bad faith" contention is that Liberty should have agreed to pay more before requesting an appraisal to resolve the dispute. There is no dispute about the policy terms, limits, or anything else of that kind in this case.

Dkt. #36 at 3. Regarding personnel records, Liberty Mutual argues that such records contain sensitive information and that "Plaintiff points to no questionable behavior by any of the people involved in the run-of-the-mill business dispute that gave rise to this law." *Id*. at 4–5. As for "general policies and procedures regarding claim audits," Liberty Mutual contends:

Liberty has agreed to produce any audits on this claim. Such a document relating to this claim may indeed contain discoverable information. After searching, Liberty determined that there were no such audits. Given this fact, the sole issue is whether there should be production of audit procedures and five years of audits of other customer claim files involving Glenda Medina and Matt Gaudet. This request is unwarranted because what occurred on other unrelated claims would be unduly intrusive into the privacy of other customers and would be extraordinarily unlikely to produce evidence material to this claim.

*Id*. at 6–7.

The Court has reviewed the arguments of both parties and agrees with Liberty Mutual as outlined above. Plaintiff Callaway's remaining discovery requests seek information unlikely to be relevant given the nature of this case. Furthermore, these requests are disproportionate to

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL - 3

the needs of the case, considering the importance of the issues at stake in the action and the relatively small amount in controversy.

Accordingly, having reviewed the briefing and the remainder of the record, the Court hereby FINDS and ORDERS that Plaintiff Callaway's Motion to Compel, Dkt. #32, is DENIED.

DATED this 27th day of April, 2026.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL - 4